IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
Rock Hill Division

| | |
|---|---|
| RAYMOND BUSCARINO, )<br>On Behalf of Himself and Others )<br>Similarly Situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TQ LOGISTICS, INC. )<br>)<br>Defendant. ) | Civil Action No.: 0:08-cv-03882-JFA<br><br>Trial by Jury Demanded |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
<u>HIS MOTION FOR SUMMARY JUDGMENT</u>**

**I.      INTRODUCTION**

Plaintiff Raymond Buscarino filed this action on behalf of himself and others similarly situated seeking to recover unpaid overtime compensation pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, from his former employer, Defendant TQ Logistics, Inc. ("TQ"). TQ is a national company that performs both "spotting" services, which generally involves shuttling empty and full trailers in and about the facilities of a customer, and "over-the-road" driving, which involves transporting a shipment from one location to another over the highway. Buscarino worked for TQ as a shuttle driver at the Abitibi/Bowater ("Bowater") paper mill in Catawba, South Carolina. Pursuant to a five-year contract that began in 2005, TQ performs "spotting" services for Bowater, whereby TQ shuttle drivers "spotted" or shuttled empty and loaded trailers within the premises of the Bowater paper mill. Because the paper mill operates non-stop, TQ performs its spotting services, through its shuttle

drivers, non-stop. Accordingly, the shuttle drivers work long hours in performing their duties.

Buscarino filed this collective action pursuant to 29 U.S.C. § 216, and the court conditionally certified a class of TQ shuttle drivers at the Bowater paper mill. During the "opt in" period, additional current and former shuttle drivers filed written consents to join and are now members of the class. TQ did not file a motion seeking to de-certify the class, and conducted individual discovery from Buscarino and each of the opt in plaintiffs.

In this action, Buscarino contests TQ's compensation plan for its shuttle drivers. It is not disputed that TQ did not pay its shuttle drivers "time and one half" for the time that they worked in excess of forty hours in a workweek. Instead, TQ paid its shuttle drivers at an hourly rate, and paid them "straight time" for all the hours worked, including hours in excess of forty in a workweek. TQ asserts that the Bowater shuttle drivers are exempt from the overtime requirements of the FLSA under the "motor carrier exemption."

Buscarino files this motion seeking that the court grant summary judgment to the Plaintiffs as to the applicability of the motor carrier exemption to their work. In addition, Buscarino seeks that the court toll the statute of limitations under the doctrine of equitable tolling as a result of TQ's actions in concealing the shuttle drivers' rights to overtime compensation. Finally, Buscarino seeks summary judgment on the issue of the shuttle drivers' right to liquidated damages in light of TQ's inability to show that it had a good faith and reasonable belief that the shuttle drivers were exempt from the overtime provisions of the FLSA.

## II. STANDARD

To obtain summary judgment, a party must demonstrate that there exists no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Rule 56(e) provides, in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

When a moving party has carried its Rule 56 burden, the opposing party must show more than "some metaphysical doubt as to the material facts," but instead must show specific facts demonstrating that there is a genuine issue for trial. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.*, 475 U.S. at 586-7.

The only facts that are properly considered "material" are facts that might affect the outcome of the case under the governing law. *Id.*, 477 U.S. at 249-50. A district court is required to enter judgment against a party who, "after adequate time for discovery … fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). An exemption to the FLSA is an affirmative defense on which the defendant bears the burden of proof. *See Clark v. J.M. Benson Co.*, 789 F.2d 282, 286 (4th Cir. 1986). Moreover, a defendant must prove the plaintiff's exempt status by clear and convincing evidence. *See Shockley v. City of Newport News*, 997 F.2d 18, 21 (4th Cir. 1993).

## III. STATEMENT OF UNDISPUTED MATERIAL FACTS.

### A. TQ's Spotting Contract with Bowater.

1. TQ contracted with Abitibi/Bowater ("Bowater") beginning in 2005 to perform "spotting services" at Bowater's paper mill in Catawba, South Carolina. (Ex. A; Catoe, 34:12-23).

2. Under its contract with Bowater, TQ is required to perform "spotting services" within the private premises of Bowater's paper mill in Catawba, South Carolina. The scope of TQ's "spotting services" under its contract with Bowater is specifically limited to performing services on Bowater's premises. (Ex. A; Catoe, 34:12-23).

3. In performing the spotting services, TQ's shuttle drivers only operate the shuttle trucks within one area of the Bowater paper mill. (Catoe, 13:12-15).

4. TQ operates the spotting services for Bowater constantly, twenty four hours per day, seven days per week, even during holidays. (Catoe, 55:23-56:4).

5. In order to keep the spotting services constant, TQ uses as many as three shuttle trucks to perform the spotting services for Bowater at the Catawba paper mill. (Catoe, 12:19-23).

6. TQ's shuttle drivers are classified as full-time or part-time. The full-time shuttle drivers work the same weekly schedule and may work as many as seventy (70) hours in a week. (Crowe, 9:14-25; 11:21-25)  The part-time shuttle drivers are used to fill in shifts where the full-time drivers are unavailable; they usually work between twelve (12) and forty eight (48) hours in a week, but may also work as many as seventy (70) hours in a week. (Crowe, 12:4-16).

**B.     The Plaintiffs' Activities in Spotting Trailers.**

7.    Bowater contracts with "over-the-road" carriers to transport their paper products from the mill in Catawba to their customers. (Catoe, 32:22-33:3).

8.    Bowater's "over-the-road" carriers are responsible for the safety of the loaded trailers after they leave the Bowater facility and enter the highway in transit to their customer. (Catoe, 33:14-34:1; 48:10-25).

9.    When an over-the-road driver brings in an empty trailer for loading, he or she pulls it to the TQ inspection dock where TQ's shuttle drivers inspect the trailer looking for anything that might damage the paper that will be loaded on the trailer. (Crowe, 20:24-21:7).

10.    TQ's shuttle drivers perform inspections on the trailers before they are loaded in order to prevent damage to Bowater's paper and injuries to Bowater employees at the Bowater paper mill. (Catoe, 14:10-12; 16:8-22; 17:1-3; 19:21-20:1; 22:8-11; 30:8-10; 47:4-8).

11.    After the trailer is inspected, the over-the-road driver takes it to the trailer pool and "drops" it. (Crowe, 21:20-24).

12.    When the Bowater loading dock is ready to load a trailer, the TQ shuttle driver will spot the trailer within Bowater's premises from the trailer pool to the Bowater loading dock using a shuttle truck. (Crowe, 22:1-4).

13.    After the shuttle driver spots the empty trailer to the Bowater loading dock, the shuttle driver releases the trailer so that Bowater employees may load it. (Crowe, 22:5-7).

14. When the trailer is loaded, a TQ shuttle driver spots the loaded trailer back to the trailer pool or to the over-the-road driver within the Bowater premises. (Crowe, 22:14-24).

15. The over-the-road driver will then hook up to the loaded trailer and take it to the security guard in order to leave the Bowater premises and put the trailer in transit on the highway. (Crowe, 23:7-12).

16. For a brief period of time, TQ's shuttle drivers spotted empty trailers between the trailer pool and an overflow parking lot outside of the fenced and gated Bowater facility, but on Bowater's property. (Catoe, 61:12-25; 62:5-63:7). The overflow parking lot was never used to store loaded trailers. (Catoe, 65:1-8). This spotting involved the TQ shuttle drivers spotting the empty trailer onto a road that ran through Bowater's property. (Catoe, 10:20-25; 61:12-62:4).

17. Since Bowater acquired property from Georgia Pacific approximately two years ago it has had sufficient room in the trailer pool in Bowater's facility to store all of the trailers, and the shuttle drivers no longer spot empty trailers to and from the employee parking lot. (Catoe, 56:5-57:2; 62:9-63:7; Nance, 12:2-13).

18. None of the TQ shuttle drivers spotting activities involved interstate travel. The spotting between the trailer pool and the loading dock occurred entirely on Bowater's private property in Catawba, South Carolina. The spotting between the trailer pool and the overflow lot occurred entirely in South Carolina, and almost completely on Bowater property. (Catoe, 61:12-25; 65:11-19).

19. On one occasion during Thanksgiving of 2005 TQ rented an over-the-road tractor and transported property for Bowater from Catawba, South Carolina to Charlotte,

North Carolina. (Crowe, 18:2-10; Pitzer, 14:19-23). These trips lasted for a couple of weeks. (Pitzer, 15:11-13).

20. David Crowe, who is not a Plaintiff in this action, was the only TQ shuttle driver from Bowater who participated in transporting the property from Catawba, South Carolina to Charlotte, North Carolina. (Crowe, 18:11-19:13; Pitzer, 20:12-14).

**C.   TQ's Good Faith Basis for Classifying the Plaintiffs as Exempt From the Overtime Requirements of the Fair Labor Standards Act.**

21. TQ could not provide any testimony regarding its basis for classifying its shuttle drivers who work at the Bowater mill as exempt from the overtime compensation requirements of the Fair Labor Standards Act, including whether TQ classified its drivers as exempt. (Nance 30(b)(6), 51:7-54:5).

22. TQ could not provide any testimony regarding its investigation or other efforts toward properly classifying its shuttle drivers who work at the Bowater mill as exempt from the overtime compensation requirements of the Fair Labor Standards Act. (Nance 30(b)(6), 51:7-54:5).

**D.   Tolling The Statute of Limitations.**

23. TQ has never placed a poster notifying its shuttle drivers at the Bowater mill of their right to overtime compensation under the Fair Labor Standards Act. (Nance 30(b)(6), 59:5-11).

24. The shuttle driver's supervisor told the shuttle drivers that they were not entitled to overtime because they were considered truck drivers. (Buscarino, 49:20-50:1; Evans, 22:12-23:1; Wilson, 21:15-22:5).

**IV.   ARGUMENT**

7

A.  **The Court Should Toll the Statute of Limitations Due To TQ's Failure to Post A Notice of Its Employee's Rights Under the Fair Labor Standards Act.**

The Plaintiffs are entitled to a tolling of the statute of limitations as a result of TQ's actions to conceal their rights to overtime compensation and minimum wages. The Plaintiffs seek that the Court toll the statute of limitations and allow them to recover unpaid overtime compensation for the overtime work that they performed prior to the two years immediately preceding the filing of this action on the grounds that TQ willfully violated the FLSA's notice provisions to its employees regarding their overtime rights. *See, e.g.*, *McClinton v. Alabama By-Prods. Corp.*, 743 F.2d 1483, 1486 (11th Cir. 1984) (estopping employer from asserting statute of limitations as a defense because of failure to post required notice under ADEA); *Kephart v. Institute of Gas Technology*, 581 F.2d 1287, 1289 (7th Cir. 1978) (estopping employer from asserting statute of limitations as a defense because of failure to post required notice under ADEA); *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187, 193 (3d Cir. 1977) (estopping employer from asserting statute of limitations as a defense because of failure to post required notice under ADEA); *Ott v. Midland-Ross Corp.*, 523 F.2d 1367, 1370 (6th Cir. 1975) (holding plaintiff may be able to prove facts estopping defendant from asserting statute of limitations under FLSA); *Hann v. Crawford & Co.*, Civ. Action No. 00-1908 (W.D.Pa. August 9, 2005), 2005 U.S. Dist. LEXIS 21233 (W.D.Pa. 2005); *Cisneros v. Jinny Beauty Supply Co., Inc.*, No. 03 C 1453 (N.D.Ill. February 6, 2004), 2004 U.S. Dist LEXIS 2094 (N.D.Ill. 2004); *Cortez v. Medina's Landscaping*, Case No. 00 C 6320 (N.D.Ill. September 30, 2002), 2002 U.S. Dist. LEXIS 18831, 2002 WL 31175471 (N.D.Ill. 2002) (tolling statute of limitations for plaintiff who filed consent to join existing FLSA collective action form more than three years after his claim accrued);

*Hency v. City of Absecon*, 148 F. Supp. 435 (D.N.J. 2001); *Baba v. Grand Central P'ship, Inc.*, 99 Civ. 5818 (TPG) (S.D.N.Y. December 8, 2000), 2000 U.S. Dist. LEXIS 17876, 2000 WL 1808971 (S.D.N.Y. 2000); *Miccoli v. Ray Communications, Inc.*, Civil Action No. 99-3825 (E.D.Pa. July 21, 2000), 2000 U.S. Dist. LEXIS 10048, 2000 WL 1006937 (E.D.Pa. 2000); *Friedrich v. U.S. Computer Servs.*, 833 F. Supp. 470, 478 (E.D.Pa. 1993); *Kamens v. Summit Stainless*, 586 F. Supp. 324, 328 (E.D.Pa. 1984). Under the FLSA, the doctrine of equitable tolling provides relief where compliance with the statute of limitations has been impossible or where an employer has concealed information or lied outright. *See Deressa v. Gobena*, 2006 U.S. Dist. LEXIS 8659 (E.D. Va. 2006); *Baba v. Grand Central P'ship, Inc.*, 99 Civ. 5818 (TPG) (S.D.N.Y. December 8, 2000), 2000 U.S. Dist. LEXIS 17876, 2000 WL 1808971 (S.D.N.Y. 2000); *Cisneros v. Jinny Beauty Supply Co.,* No. 03 C 1453 (N.D. Ill. February 6, 2004), 2004 U.S. Dist. LEXIS 2094 (N.D. Ill. 2004); *Kamens v. Summit Stainless, Inc.*, 586 F. Supp 324 (E.D. Pa. 1984). In the present case, it is undisputed that TQ engaged in purposeful conduct designed to prevent its employees from becoming aware of their FLSA rights, including falsely informing them they were not entitled to overtime pay and failing to post the mandated FLSA rights and benefits poster. TQ's corporate designee for its 30(b)(6) deposition, Charlie Nance, who has been in charge of TQ's Bowater operations since the Bowater contract commenced, testified that TQ ***never*** put up a poster notifying the Bowater shuttle drivers of their right to overtime compensation. In addition, the Plaintiffs' supervisor told many of the Plaintiffs that they were exempt from the overtime requirements of the FLSA because they were considered truck drivers. Accordingly, the tolling of the statute of limitations is appropriate in this action.

B. **The Court Should Find that the Plaintiffs' Are Not Exempt From the FLSA's Overtime Compensation Requirements Under the Motor Carrier Exemption**

Congress enacted the Fair Labor Standards Act in 1938 in order to protect workers from substandard wages. *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739, 67 L.Ed.2d 641, 101 S.Ct. 1437 (1981). As a general rule, the Fair Labor Standards Act requires an employer to pay an employee one-and-one half times his normal hourly rate for all time work in excess of forty hours in a workweek. 29 U.S.C. § 207(a)(1). This general rule, however, is subject to limited exemptions, which must be shown by the employer. *See Clark v. J.M. Benson Co.*, 789 F.2d 282, 286 (4th Cir. 1986) (An exemption to the FLSA is an affirmative defense on which the defendant bears the burden of proof.) When determining whether an employee is entitled to overtime compensation, "any exemption … must be narrowly construed giving due regard to the plain meaning of the statutory language and the intent of Congress." *A.H. Phillips, Inc. v. Walling,* 324 U.S. 490, 493, 89 L. Ed. 1095, 65 S.Ct. 807 (1945). Thus, employers who claim an exemption applies to their employees must show that the employees fit plainly and unmistakably within its terms. *Id.* ("To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the people."); *See also Worthington v. Icicle Seafoods, Inc., 774 F.2d 349, 352 (9th Cir. 1984)* (*citing A.H. Phillips, Inc. v. Walling, 324 U.S. 490, 493, 89 L. Ed. 1095, 65 S. Ct. 807 (1945)).* In the Fourth Circuit, a defendant must prove the plaintiff's exempt status by clear and convincing evidence. *See Shockley v. City of Newport News*, 997 F.2d 18, 21 (4th Cir. 1993). In the present case, TQ argues that the Plaintiffs are exempt under the Motor Carrier Exemption. As will be

shown, however, TQ cannot show that the Plaintiffs are exempt under the Motor Carrier Exemption, and this Court should award summary judgment to the Plaintiffs.

In the present case, TQ asserts that it is entitled to the motor carrier exemption, set forth in 29 U.S.C. § 213(b)(1), which reads:

> (b) Maximum hour requirements. The provisions of [29 U.S.C. § 207] shall not apply with respect to –
>
> (1) any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act, 1935 [49 U.S.C. § 31502] ….

29 U.S.C. § 213(b)(1). Thus, § 213(b) exempts from the overtime compensation provisions those employees who are subject to the jurisdiction of the Secretary of Transportation pursuant to the Motor Carrier Act, and no concurrent jurisdiction exists between § 207 of the FLSA and § 31502 of the MCA. *See Jones v. Giles*, 741 F.2d 245, 249 (9th Cir. 1984) (citing *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 661, 91 L.Ed. 1158, 67 S.Ct. 931 (1947)).

The Department of Labor's FLSA regulations recognize that "[t]he power of the Secretary of Transportation to establish maximum hours and qualifications of service of employees, on which the exemption depends, extends to those classes of employees and those only who: (1) Are employed by carriers whose transportation of passengers or property by motor vehicle is subject to his jurisdiction under section 204 of the Motor Carrier Act, and (2) engage in activities of a character directly affecting the safety of operations of motor vehicles in the transportation on public highways of passengers or property in interstate or foreign commerce within the meaning of the *Motor Carrier Act*." 29 C.F.R. 782.2(a) (internal citations omitted).

The courts have made clear that the exemption is based on the activities of the individual employee, and an employer cannot simply exempt all of its employees. *See Dole v. Circle A. Constr., Inc.*, 738 F. Supp. 1313, 1319 (D. Idaho 1990) (citing *Morris v. McComb*, 332 U.S. 422, 434, 92 L.Ed. 44, 68 S.Ct. 131 (1947). "The exemption is applicable, under decisions of the U.S. Supreme Court, to those employees and those only whose work involves engagement in activities consisting wholly or in part of a class of work which is defined: (i) As that of a driver, driver's helper, loader, or mechanic, and (ii) as directly affecting the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce within the meaning of the *Motor Carrier Act*. 29 C.F.R. 782.2(b)(2). As will be shown, the Plaintiffs satisfy neither of these elements, and are not subject to the motor carrier exemption.

1. **The Plaintiffs Do Not Perform the Work of a "Driver" As Defined Under the Motor Carrier Act.**

The Plaintiffs are not exempt "drivers" within the meaning of the motor carrier exemption because they never transported property by "motor vehicle" in "interstate commerce" within the meaning of the Motor Carrier Act. "A 'driver,' as defined for Motor Carrier Act jurisdiction is an individual who drives a motor vehicle in transportation which is, within the meaning of the Motor Carrier Act, in interstate or foreign commerce." 29 C.F.R. 782.3(a). The undisputed facts show that the Plaintiffs' driving was limited to the following "spotting" activities: (1) all of the Plaintiffs spotted empty trailers from Bowater's trailer pool to Bowater's loading dock; (2) all of the Plaintiffs spotted loaded trailers from Bowater's loading dock to Bowater's trailer pool; and (3) for a brief period of time[1], some of the Plaintiffs spotted empty trailers between Bowater's trailer pool and a temporary "overflow" trailer pool set up in a Bowater employee parking lot. While the first two types of spotting occurred entirely on Bowater's private premises. the spotting to the overflow trailer involved briefly driving on a public way. As will be shown, however, none of these activities qualify the Plaintiffs as "drivers" subject to DOT jurisdiction as that term is defined by the Motor Carrier Act.

   a. **The Plaintiffs Are Not "Drivers" Because They Did Not Operate "Motor Vehicles" For Purposes of the Motor Carrier Act.**

"A 'driver,' as defined for Motor Carrier Act jurisdiction is an individual who ***drives a motor vehicle in transportation*** which is, ***within the meaning of the Motor Carrier Act, in interstate or foreign commerce***." 29 C.F.R. 782.3(a) (emphasis added). Under the Motor Carrier Act, "[m]otor vehicle means any vehicle, machine, ***tractor***, ***trailer***, or semitrailer propelled or drawn by mechanical power and ***used upon the***

---

[1] The testimony varied significantly as to when this period of time occurred.

***highways*** in the ***transportation of passengers or property***…." 49 C.F.R. §390.5 (emphasis added). The MCA defines "highway" to mean:

> any road, street, or way, whether on public or private property, open to public travel. ***'Open to public travel' means that the road section is available***, except during scheduled periods, extreme weather or emergency conditions, passable by four-wheel standard passenger cars, ***and open to the general public for use without restrictive gates, prohibitive signs, or regulations*** other than restrictions based on size, weight, or class registration…."

*Id.* (emphasis added). As will be shown, the Plaintiffs did not drive "motor vehicles" when they performed any of their spotting activities, whether entirely on Bowater property, or between the trailer pool and the employee parking lot.

The Plaintiffs are not drivers subject to the motor carrier exemption by spotting an empty trailer from the Bowater trailer pool to the Bowater loading dock because they cannot be operating a "motor vehicle" during this activity for two reasons. First, as defined by the MCA, a "motor vehicle" must be driven "on the highways," and this spotting by the Plaintiffs occurred entirely on Bowater's private property to which travel is restricted by gates that are manned by security guards. Also, the spotting of an ***empty*** trailer does not involve "transportation of passengers or property" because the empty trailer, which by definition is a part of the "motor vehicle,"[2] is not carrying either. Accordingly, this spotting does not give DOT jurisdiction over the Plaintiffs, and does not exempt them from the FLSA's overtime compensation requirements.

Likewise, the Plaintiffs are not drivers subject to the motor carrier exemption by spotting a loaded trailer from the Bowater loading dock to the Bowater trailer pool, which also does not involve the operation of a "motor vehicle" for purposes of the MCA.

---

[2] As shown above, the Motor Carrier Act's definition of "motor vehicle" includes both the tractor and the trailer. 49 C.F.R. §390.5.

14

Because this spotting occurs entirely on Bowater's private premises, to which travel is restricted by a manned gate, it cannot occur on "the highways" as required to meet the MCA's definition of a "motor vehicle."

Although a few Plaintiffs engaged in spotting empty trailers from Bowater trailer pool to the temporary "overflow" trailer pool in the Bowater employee parking lot, which involved a very short drive on a public road through Bowater property, this activity does not qualify those Plaintiffs as drivers because it does not involve the use of a "motor vehicle." As shown previously, in order to be a "driver" under the MCA, an employee must operate a "motor vehicle," which requires that they transport people or property. Thus, because the trailers that these Plaintiffs were spotting between the trailer pool and the employee parking lot were empty, they did not involve the transportation of property. Thus, this spotting activity does not give DOT jurisdiction over those Plaintiffs, and does not exempt them from the FLSA.

  **b.  Plaintiffs Are Not "Drivers" Because They Did Not Engage In "Transportation In Interstate or Foreign Commerce."**

"A 'driver,' as defined for Motor Carrier Act jurisdiction is an individual who drives a motor vehicle in transportation which is, *within the meaning of the Motor Carrier Act, in interstate or foreign commerce*." 29 C.F.R. 782.3(a) (emphasis added). "[T]he activities of drivers … in connection with transportation which is not in interstate or foreign commerce within the meaning of the Motor Carrier Act provide no basis for exemption under section 13(b)(1) of the Fair Labor Standards Act." 29 C.F.R. 782.2(d) (citations omitted). For purposes of the Motor Carrier Act, "interstate commerce" is not given the same broad meaning as the term is given in other contexts. 29 C.F.R. § 782.7. Instead, the Motor Carrier Act defines interstate commerce to mean

"trade, traffic, or transportation in the United States – (1) Between a place in a State and a place outside of such State (including a place outside of the United States); (2) Between two places in a State through another State or a place outside of the United States; or (3) Between two places in a State as part of trade, traffic, or transportation originating or terminating outside the State of the United States." 49 C.F.R. §390.5. The Plaintiffs did not engage in any such transportation, however, because all of their spotting activity occurred entirely within the state of South Carolina. In fact, most of the Plaintiffs' spotting activity occurred exclusively on Bowater property.

The Department of Labor's guidance shows that the spotting performed by the Plaintiffs does not qualify them for the motor carrier exemption. For instance, with regard to spotting that involves a operating briefly on a highway, the DOL recognizes case decisions holding that "hostlers" who 'spot' trucks and trailers at a terminal dock for loading and unloading ***are not exempt as drivers merely because as an incident of such duties they drive the trucks and tractors in and about the premises of the trucking terminal.*** 29 C.F.R. 782.3(b) (citations omitted) (emphasis added). Likewise, the DOL Field Operations Handbook shows that the spotting duties performed by the Plaintiffs do not qualify them for the exemption. The Handbook's section on "Spotting" reads:

> The movement of trucks, tractors, or trailer (either empty or loaded) ***over the public highways*** between loading platforms, the garage, storage facilities or terminals, ***where such movement is either the beginning or continuation of an interstate or foreign journey***, is itself transportation in interstate or foreign commerce subject to the jurisdiction of the DOT. ***If such "spotting" of equipment takes place entirely on the premises of a terminal or other private property, however, DOT would have no such jurisdiction since it would not be transportation over the public highways.***

DOL Field Operations Handbook, 24b "Safety-Affecting Activities", 24b00 "Spotting" trucks, tractors, trailers (emphasis added). Thus, it is clear that the spotting that occurs entirely on Bowater's premises cannot form the basis of DOT jurisdiction. Moreover, the few Plaintiffs whose activity included operating on a public way to spot empty trailers between the trailer pool and the overflow trailer pool in the employee parking lot are not exempt because this spotting was neither the beginning nor a continuation of an interstate or foreign journey. Instead, the entirety of this movement was from the trailer pool to the employee parking lot and back, all of which occurred in a single state, and nearly all of which occurred on private property. Accordingly, the Plaintiffs did not engage in "interstate or foreign commerce" as that term is defined by the MCA.

2. **The Plaintiffs Did Not Perform Work That Affected The Safety of Operation of Motor Vehicles In Transportation of Property In Interstate Commerce.**

Because the Plaintiffs did not engage in activities "directly affecting the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce within the meaning of the Motor Carrier Act," they cannot meet the qualifications for the motor carrier exemption. "Except insofar as the Commission has found that the activities of drivers, driver's helpers, loaders, and mechanics, as defined by it, ***directly affect such "safety of operation,"*** it has disclaimed its power to establish qualifications of maximum hours of service under section 204 of the Motor Carrier Act." 29 C.F.R. 782.2(d) (citations omitted) (emphasis added). "Safety of operations as used in section 204 of the Motor Carrier Act means '***the safety of operations of motor vehicles in the transportation of passengers or property in interstate commerce, and that alone***.'" *Id.* (internal citations omitted) (emphasis added). "The work of an employee who is a full-duty or partial-duty "driver," as the term "driver" is … defined, directly

17

affects the "safety of operation" within the meaning of section 204 of the Motor Carrier Act *whenever he drives a motor vehicle in interstate or foreign commerce within the meaning of the act*." 29 C.F.R. 782.3(b) (citations omitted) (emphasis added). As will be shown, the activities of the Plaintiffs do not meet any of the "safety of operation" criteria necessary to qualify them for the motor carrier exemption.

The Plaintiffs do not "directly affect the safety of operation of motor vehicles" for similar reasons that they do not meet the definition of a "driver." In order to fall within the jurisdiction of the DOT, a driver must drive a "motor vehicle" in "interstate or foreign commerce," as those terms are defined by the MCA. As shown previously, with regard to the spotting that occurs entirely on Bowater premises, this spotting activity does not fulfill the definitional requirements of either a "motor vehicle," or "interstate or foreign commerce." The Plaintiffs' driving on Bowater property does not involve operating a "motor vehicle" for purposes of the Motor Carrier Act, because this definition requires driving on the highways. *See* 29 C.F.R. 782.2 (e) ("[T]he exemption does not extend to employees merely because they engage in activities affecting the safety of operations of motor vehicles *operated on private premises*.") (emphasis added). Also as shown previously, none of the Plaintiffs' spotting activities involved "interstate or foreign commerce" as defined by the MCA because all of their spotting activity occurred entirely within the boundaries of a single state. Thus, the Plaintiffs spotting activities do not subject them to the jurisdiction of the DOT.

**C. The Undisputed Facts Show that Plaintiffs Are Entitled to Liquidated Damages Because TQ Cannot Show That It Acted In "Good Faith."**

Under 29 U.S.C. §216(b), a court must award a private party liquidated damages in an amount equal to the amount of unpaid overtime owed to the employees. 29 U.S.C.

§216(b). The courts have made clear that an award of liquidated damages is mandatory unless the employer presents a proper defense. *See, e.g. Avitia v. Metropolitan Club*, 49 F.3d 1219, 1223 (7th Cit. 1995).

TQ cannot show that it is entitled to the "good faith" defense under 29 U.S.C. §260, because it cannot show that it either acted with subjective good faith or had any basis for believing its failure to pay Plaintiffs unpaid overtime did not violate the FLSA. In order to prove the "good faith" defense under §260, an employer must show (1) that its act or failure to act was in good faith (subjective good faith), and (2) that it had reasonable grounds for believing that its act or omission did not violate the FLSA (objective good faith). 29 U.S.C. §260. It has long been the law in the Fourth Circuit that "for a delinquent employer to escape the payment of liquidated damages, he must sustain the 'plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict.'" *Wright v. Carrigg*, 275 F.2d 448, 449 (4th Cir. 1960) (*citing Rothman v. Publicker Industries*, 201 F.2d 618, 620 (3d Cir. 1953)).

TQ cannot show that it acted with either subjective or objective good faith because it cannot show that it took any action to ascertain or follow the requirements of the FLSA. "Good faith requires some duty to investigate potential liability under the FLSA." *Troutt v. Stavola Bros., Inc.*, 905 F. Supp. 295, 302 (M.D.N.C. 1995), aff'd 1997 U.S. App. LEXIS 3767 (4th Cir. May 7, 1997) (internal citations omitted). "An employer cannot 'simply remain blissfully ignorant of FLSA requirements' and avoid liability for liquidated damages." *Burnley v. Short*, 730 F.2d 136, 140 (4th Cir. 1984). In the present

case, TQ cannot provide evidence as to the basis of its good faith because, through its 30(b)(6) designee, it claims no knowledge of the basis of its exempting the Plaintiffs, or of its evaluation process in classifying them as exempt. Accordingly, the Plaintiffs are entitled to liquidated damages as a matter of law.

## V. CONCLUSION

For the reasons set forth herein, Plaintiffs request that this Court enter judgment in their favor and against the Defendant.

Respectfully submitted,

RAYMOND BUSCARINO,
On Behalf of Himself and Others
Similarly Situated

By: s/William C. Tucker
William C. Tucker (Federal ID 6187)
Nelson & Tucker, PLC
600 Peter Jefferson Parkway, Suite 100
Charlottesville, Virginia 22911
Telephone: (434) 979-0049
Facsimile: (434) 979-0037
Email: william.tucker@nelsontucker.com

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Plaintiff's Memorandum In Support of His Motion for Summary Judgment was served by electronic mail on this 25th day of May, 2010 to the following:

Robert D. Moseley, Jr., Esq.
Jason Nutzman, Esq.
300 East McBee Ave.
Suite 500
Greenville, South Carolina 29601
(864) 242-6440 *Phone*
(864) 240-2474 *Fax*
rob.moseley@smithmoorelaw.com
jason.nutzman@smithmoorelaw.com