**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**Rock Hill Division**

| | | |
|---|---|---|
| **RAYMOND BUSCARINO,** | ) | |
| **On Behalf of Himself and Others** | ) | **Civil Action No.: 0:08-cv-03882-JFA** |
| **Similarly Situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Trial by Jury Demanded** |
| **v.** | ) | |
| | ) | |
| **TQ LOGISTICS, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF**
**HIS MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff Raymond Buscarino filed this action on behalf of himself and others similarly situated seeking to recover unpaid overtime compensation pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., from his former employer, Defendant TQ Logistics, Inc. ("TQ"). Buscarino has filed for Summary Judgment on the following issues: (A) The applicability of the doctrine of equitable tolling on the statute of limitations; (B) The applicability of the motor carrier exemption; and (C) the Plaintiffs' entitlement to liquidated damages. As will be shown, the Plaintiffs are entitled to summary judgment on each of these issues.

## II. STANDARD

To obtain summary judgment, a party must demonstrate that there exists no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Rule 56(e) provides, in relevant part:

> When a motion for summary judgment is made and
> supported as provided in this rule, an adverse party may not
> rest upon the mere allegations or denials of his pleading,
> but his response, by affidavits or as otherwise provided in
> this rule, must set forth specific facts showing that there is a
> genuine issue for trial. If he does not so respond, summary
> judgment, if appropriate, shall be entered against him.

When a moving party has carried its Rule 56 burden, the opposing party must show more than "some metaphysical doubt as to the material facts," but instead must show specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.*, 475 U.S. at 586-7.

The only facts that are properly considered "material" are facts that might affect the outcome of the case under the governing law. *Id.*, 477 U.S. at 249-50. A district court is required to enter judgment against a party who, "after adequate time for discovery … fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). An exemption to the FLSA is an affirmative defense on which the defendant bears the burden of proof. *See Clark v. J.M. Benson Co.*, 789 F.2d 282, 286 (4th Cir. 1986). Moreover, a defendant must prove the plaintiff's exempt status by clear and convincing evidence. *See Shockley v. City of Newport News*, 997 F.2d 18, 21 (4th Cir. 1993).

## III.    ARGUMENT

**A.    The Plaintiffs Are Entitled to Equitable Tolling of the Statute of Limitations.**

The Plaintiffs are entitled to a tolling of the statute of limitations as a result of TQ's actions to conceal their rights to overtime compensation and minimum wages. Under the FLSA, the doctrine of equitable tolling provides relief where compliance with the statute of limitations has been impossible or where an employer has concealed information or lied outright. *See Deressa v. Gobena*, 2006 U.S. Dist. LEXIS 8659 (E.D. Va. 2006); *Baba v. Grand Central P'ship, Inc*., 99 Civ. 5818 (TPG) (S.D.N.Y. December 8, 2000), 2000 U.S. Dist. LEXIS 17876, 2000 WL 1808971 (S.D.N.Y. 2000); *Cisneros v. Jinny Beauty Supply Co.,* No. 03 C 1453 (N.D. Ill. February 6, 2004), 2004 U.S. Dist. LEXIS 2094 (N.D. Ill. 2004); *Kamens v. Summit Stainless, Inc*., 586 F. Supp 324 (E.D. Pa. 1984).   In the present case, it is undisputed that TQ both falsely informed the Plaintiffs that they were not entitled to overtime pay and failed to post the mandated FLSA rights and benefits poster. In its opposition brief, TQ admits that it concealed the Plaintiffs' rights from them by failing to post the required poster. Moreover, TQ never addresses the undisputed fact that the Plaintiffs' supervisor misled them by telling them that they were not entitled to overtime pay because they were considered "truck drivers." Accordingly, the Plaintiffs are entitled to summary judgment on the applicability of equitable tolling on the statute of limitations.

**B.    TQ Has Not Shown That the Plaintiffs Are Exempt "Drivers" Under the Motor Carrier Exemption.**

TQ asserts that the Plaintiffs are exempt "drivers" under the motor carrier exemption. "A 'driver,' as defined for Motor Carrier Act jurisdiction is an individual who drives a motor vehicle in transportation which is, within the meaning of the Motor Carrier

Act, in interstate or foreign commerce." 29 C.F.R. 782.3(a). Because TQ has not shown that the Plaintiffs meet each of the requirements of this exemption, however, the Plaintiffs are entitled to summary judgment.

1.      **TQ Has Not Shown That The Plaintiffs Operated a "Motor Vehicle" By Operating a "Certified Tractor."**

Under the Motor Carrier Act, "[m]otor vehicle means any vehicle, machine, ***tractor***, ***trailer***, or semitrailer propelled or drawn by mechanical power and ***used upon the highways*** in the ***transportation of passengers or property***…." 49 C.F.R. §390.5 (emphasis added). In opposition to the Plaintiffs' motion, TQ's only contention is that "[t]he Plaintiffs do not and cannot dispute that they were operating a 'motor vehicle,' as the tractors[1] driven by the Plaintiffs were DPT/EPA certified tractors." Def. Opp. Mem., p. 6. Because the definition of "motor vehicle" contains no reference to any certification by any governmental agency, this "fact" is immaterial and cannot serve to defeat the Plaintiffs' motion.

2.      **TQ Has Not Shown That The Plaintiffs Operated a "Motor Vehicle" "Upon the Highways In The Transportation of Passengers or Property."**

In support of its contention that the Plaintiffs are exempt, TQ identifies the following activities that it contends were performed by the Plaintiffs and subjected them to the exemption: (1) spotting empty trailers from the trailer pool to the loading dock; (2) spotting loaded trailers from the loading dock to the trailer pool; (3) spotting empty trailers to and from a temporary overflow parking lot; (4) spotting loaded trailers to and from a temporary overflow parking lot; and (5) transporting goods from Catawba, South Carolina to Charlotte, North Carolina. TQ has not shown, however, that any of these activities qualify any of the Plaintiffs for the motor carrier exemption.

---

[1] It is undisputed that the shuttle trucks were not "tractors" intended for use for over the road shipping.

4

a.    **The Plaintiffs Do Not Qualify for the Motor Carrier Exemption As A Result of Spotting Trailers Between the Trailer Pool and the Loading Dock.**

Although it is undisputed that all of the Plaintiffs engaged in spotting empty trailers from the trailer pool to the loading dock, and loaded trailers from the loading dock to the trailer pool, neither of these activities can qualify the Plaintiffs for the motor carrier exemption because these spots occur entirely on private property that is not open to the public.  The MCA defines "highway" to mean:

> any road, street, or way, whether on public or private property, open to public travel.  ***'Open to public travel' means that the road section is available***, except during scheduled periods, extreme weather or emergency conditions, passable by four-wheel standard passenger cars, ***and open to the general public for use without restrictive gates, prohibitive signs, or regulations*** other than restrictions based on size, weight, or class registration…."

*Id.* (emphasis added).  TQ has not provided any factual support for its argument that the Plaintiffs were operating on a public highway when spotting empty trailers from the trailer pool to the loading dock or spotting loaded trailers from the loading dock to the trailer pool. In fact, it is undisputed that the Plaintiffs' entire path of travel was within an area of the Bowater facility that is inaccessible to the public without going through a secured gate. Catoe Decl, ¶¶ 4-7.  Thus, "spots" from the trailer pool to the loading dock, or from the loading dock to the trailer, whether the trailer was loaded or unloaded, cannot serve to exempt any of the Plaintiffs as they do not involve the use of a "motor vehicle" on a "highway."

b.    **The Plaintiffs Do Not Qualify for the Motor Carrier Exemption As a Result of Spotting Empty Trailers To and From the Overflow Parking Lot.**

Although a few Plaintiffs engaged in spotting empty trailers from Bowater trailer pool to the temporary "overflow" trailer pool in the Bowater employee parking lot, which

involved a very short drive on a public road through Bowater property, this activity does not qualify those Plaintiffs as drivers because it does not involve the use of a "motor vehicle." As shown previously, in order to be a "driver" under the MCA, an employee must transport passengers or property. Thus, because the trailers that these Plaintiffs were spotting between the trailer pool and the employee parking lot were empty, they did not involve the transportation of property.

TQ misinterprets the DOL Field Operations Handbook as supporting its position that the Plaintiffs engaged in interstate commerce within the meaning of the Motor Carrier Act by spotting empty trailers. The Motor Carrier Act defines interstate commerce to mean "trade, traffic, or transportation in the United States – (1) Between a place in a State and a place outside of such State (including a place outside of the United States); (2) Between two places in a State through another State or a place outside of the United States; or (3) Between two places in a State as part of trade, traffic, or transportation originating or terminating outside the State of the United States." 49 C.F.R. §390.5. As TQ correctly pointed out in Defendant's Memorandum of Law In Support of Its Motion for Summary Judgment, an employee need not actually drive across state lines in order to meet this definition so long as the "goods" he or she is transporting are moving across state lines. See Def. Mem., p. 10 (*citing Martin v. Airborne Exp.*, 16 F. Supp. 2d 623, 628 (E.D.N.C. 1996) ("the movement of goods solely within a single state can nevertheless be classified as interstate commerce if what is being transported is actually moving in interstate commerce.") (internal citations omitted); *Project Hope v. M/V Ibn Sina*, 250 F.3d 67, 74-75 (2d Cir. 2001) (whether transportation is of an interstate nature is determined by a reference to its "intended final destination" even if a

carrier is only responsible for an intrastate leg of the shipment.) Accordingly, an employee who is spotting an empty trailer cannot be engaged in the intrastate leg of an interstate journey with regard to the goods being shipped as no goods are being shipped.

**c.      The Plaintiffs Do Not Qualify for the Motor Carrier Exemption As a Result of Spotting Loaded Trailers To and From the Overflow Parking Lot.**

Whether TQ's shuttle drivers spotted loaded trailers to and from the overflow parking lot for a brief period of time is a disputed question of fact. Nonetheless, as a matter of law performing this spot cannot serve to exempt any Plaintiff because no interstate journey of the goods had yet begun. As the DOL regulations recognize, "hostlers" who 'spot' trucks and trailers at a terminal dock for loading and unloading ***are not exempt as drivers merely because as an incident of such duties they drive the trucks and tractors in and about the premises of the trucking terminal."*** 29 C.F.R. 782.3(b) (citations omitted) (emphasis added). It is undisputed that TQ's contract with Bowater under which the Plaintiffs performed spotting activities is limited to spotting within the premises of the Bowater facility, and does not include any "over the road" transportation. Thus, even if TQ's shuttle drivers spotted loaded trailers to and from an overflow parking lot within the Bowater premises, they did not transport goods on a leg of a journey; the entire trip would have been from the Bowater paper mill to the Bowater paper mill. As far as transportation is concerned, no goods have moved. Instead, the goods begin their movement when an over the road driver takes them out of the Bowater property and toward their destination.

**d.    TQ Has Not Shown That Any of the Plaintiffs Were Exempt Based on the Activities of Other Drivers Spotting To and From the Overflow Lot or Transporting Goods to Charlotte, North Carolina.**

TQ attempts to exempt all of its shuttle drivers based on (a) some drivers spotting trailers to and from an overflow parking lot temporarily, and (b) specific drivers transporting goods over the road under a one-time agreement for a brief period of time. The exemption, however, is based on the activities of the individual employee, and an employer cannot simply exempt all of its employees, even if they fall within the same position. *See Dole v. Circle A. Constr., Inc.*, 738 F. Supp. 1313, 1319 (D. Idaho 1990) (citing *Morris v. McComb*, 332 U.S. 422, 434, 92 L.Ed. 44, 68 S.Ct. 131 (1947). The DOT has also made clear that its jurisdiction is based on the activities of each individual driver. Federal Highway Administration Notice of Interpretation, Notice No. 81-4, 46 F.R. 37902 (July 23, 1981) ("In order to determine whether a driver is subject to the FHWA's jurisdiction the activities or likely activities of the individual driver must be reviewed.") (citing *Morris v. McComb*, 322 U.S. 422 (1947)). "Jurisdiction does not attach if there is no possibility of the individual driver doing interstate driving or if the possibility of interstate driving is remote." Id. Likewise, jurisdiction does not attach to drivers who have never been used in interstate commerce and cannot reasonably be expected to handle an interstate run in the normal performance of their duties. Id. (*citing Goldberg v. Faber Industries*, 291 F.2d 232 (7th Cir. 1961). The DOT specifically notes that evidence of interstate trips during a brief period of time is insufficient to establish the exemption for a broader time period. Id. (*citing Coast Van Lines v. Armstrong,* 167 F.2d 705 (9th Cir. 1948).

TQ has not shown that the motor carrier exemption applies to any of the Plaintiffs for any time period during which they were employed. The DOT has established a "four month rule," under which the DOT will assume jurisdiction over a "driver" for four months from the date the driver is subject to driving in interstate transportation. *See* Federal Highway Administration Notice of Interpretation, Notice No. 81-4, 46 F.R. 37902 (July 23, 1981) (establishing "four month rule."). In establishing the "four month rule," the Federal Highway Administration stated the rule as such: "Evidence of driving in interstate commerce or being subject to being used in interstate commerce should be accepted as proof that the driver is subject to 49 U.S.C. [§]304 for a 4-month period *from the date of the proof*." Id. (emphasis added). The FHWA added: "If jurisdiction is claimed over a driver who has not driven in interstate commerce, evidence must be presented that the carrier has engaged in interstate commerce and *that the driver could reasonably have been expected to make one of the carrier's interstate runs*." Id. (emphasis added).

Even if the temporary "spotting" activities to and from the overflow parking lot can subject a shuttle driver to the motor carrier exemption, TQ has not shown any time period during which any Plaintiff was subject to DOT jurisdiction so as to be exempt from the FLSA's overtime provisions. It is undisputed that the overflow lot was only used for a brief period of time, and that it is no longer being used. Catoe Dep., p. 56:11-20; 62:5-8; 62:9-25. Moreover, it is undisputed that the overflow lot is not likely to be used again in the future. Catoe Dep., p. 63:1-7; Nance Dep., p. 12:2-13:8; Crowe Dep., p. 16:16-18:1. Because TQ has not provided any evidence of the time period during which the overflow lot was being used, or the time period during which each Plaintiff was

employed, it cannot show the time period during which any of the Plaintiffs would have been subject to DOT's "four month rule." Instead, TQ simply asserts that these temporary activities of some unidentified shuttle drivers universally exempt all of its shuttle drivers for all times, including those shuttle drivers and Plaintiffs who did not work for TQ during the time that these activities were being performed. Accordingly, TQ has not provided the facts necessary to show an entitlement to the exemption, and the Plaintiffs are entitled to summary judgment.

Similarly, even if the Court finds that any of the Plaintiffs were reasonably likely to engage in the over-the-road trips from Catawba to Charlotte, North Carolina,[2] these trips would only entitle TQ to apply the exemption to those Plaintiffs for a four-month period, and not serve to universally exempt any shuttle driver who ever worked for TQ at Bowater for the entirety of TQ's spotting contract. Again, because TQ has not provided the evidence necessary to show that any Plaintiff is exempt, the Plaintiffs are entitled to summary judgment.

## 2. The Plaintiffs Did Not Perform Work That Affected The Safety of Operation of Motor Vehicles In Transportation of Property In Interstate Commerce.

TQ has not shown that the Plaintiffs engaged in activities "directly affecting the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce within the meaning of the Motor Carrier Act." "Except insofar as the Commission has found that the activities of drivers, driver's helpers, loaders, and mechanics, as defined by it, *directly affect such "safety of operation,"* it has disclaimed its power to establish qualifications of maximum hours of service under

---

[2] As argued more fully in Plaintiffs' Brief In Opposition to Defendant's Motion for Summary Judgment, none of them were reasonably likely to engage in over-the-road trips to Charlotte because these trips were given to four specific employees, only one of whom was a shuttle driver at Bowater.

section 204 of the Motor Carrier Act." 29 C.F.R. 782.2(d) (citations omitted) (emphasis added). "Safety of operations as used in section 204 of the Motor Carrier Act means '*the safety of operations of motor vehicles in the transportation of passengers or property in interstate commerce, and that alone*.'" *Id.* (internal citations omitted) (emphasis added).

The peripheral safety duties cited by TQ do not bring the Plaintiffs within the safety requirements of the exemption under the motor carrier exemption because they do not fall within the defined duties of a driver, driver's helper, loader or mechanic.[3] "The U.S. Supreme Court has accepted the Agency determination, that activities of this character are included in the kinds of work which has been described as the work of drivers, driver's helpers, loaders, and mechanics (see §§ 782.3-782.6) employed by such carriers, and *no other classes of employees employed by such carriers perform duties directly affecting the "safety of operation*."[4] 29 C.F.R. § 782.2(b)(1) (emphasis added).

The "safety" procedures also cannot bring the Plaintiffs within the exemption because it is undisputed that the procedures only directly affect safety on Bowater's private property. "The jurisdiction of the Secretary of Transportation under section 204 of the Motor Carrier Act relates to safety of operation of motor vehicles only, and "to the safety of operation of such vehicles on the highways of the country, and that alone." 29 C.F.R. § 782.2(e) (citing *Ex Parte Nos. MC-2 and MC-3, 28 M.C.C. 125, 192*; *U.S. v. American Trucking Ass'n*, 319 U.S. 534, 548). "Accordingly, the exemption does not

---

[3] TQ cites to a single decision involving a *pro se* Plaintiff in which the court found that a dispatcher engaged in "safety affecting activities." A reading of the case shows that it is wrongly decided as the duties of the Plaintiff did not bring him within any of the four defined classes of work.

[4] Although TQ correctly points out that the job titles given to employees do not matter, this does not relieve TQ of its obligation to show that the Plaintiff's duties fall within one of the four classes of jobs that qualifies for the exemption. See 29 C.F.R. § 782.2(b)(2).

extend to employees merely because they engage in activities affecting the safety of operation of motor vehicles operated on private premises." Id.

**C.      The Undisputed Facts Show that Plaintiffs Are Entitled to Liquidated Damages Because TQ Cannot Show That It Acted In "Good Faith."**

TQ cannot show that it is entitled to the "good faith" defense under 29 U.S.C. §260, because it cannot show that it either acted with subjective good faith or had any basis for believing its failure to pay Plaintiffs unpaid overtime did not violate the FLSA. Under 29 U.S.C. §216(b), a court must award a private party liquidated damages in an amount equal to the amount of unpaid overtime owed to the employees. 29 U.S.C. §216(b).  The courts have made clear that an award of liquidated damages is mandatory unless the employer presents a proper defense. *See, e.g. Avitia v. Metropolitan Club*, 49 F.3d 1219, 1223 (7th Cit. 1995).  In order to prove the "good faith" defense under §260, an employer must show (1) that its act or failure to act was in good faith (subjective good faith), and (2) that it had reasonable grounds for believing that its act or omission did not violate the FLSA (objective good faith). 29 U.S.C. §260.  It has long been the law in the Fourth Circuit that "for a delinquent employer to escape the payment of liquidated damages, he must sustain the 'plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict.'" *Wright v. Carrigg*, 275 F.2d 448, 449 (4th Cir. 1960) (*citing Rothman v. Publicker Industries*, 201 F.2d 618, 620 (3d Cir. 1953)).

TQ has not provided any facts showing that it acted with either subjective or objective good faith because it has not provided any facts showing that it took any action to ascertain or follow the requirements of the FLSA. "Good faith requires some duty to

investigate potential liability under the FLSA." *Troutt v. Stavola Bros., Inc.*, 905 F. Supp. 295, 302 (M.D.N.C. 1995), aff'd 1997 U.S. App. LEXIS 3767 (4th Cir. May 7, 1997) (internal citations omitted). "An employer cannot 'simply remain blissfully ignorant of FLSA requirements' and avoid liability for liquidated damages." *Burnley v. Short*, 730 F.2d 136, 140 (4th Cir. 1984). Instead of providing facts showing that it attempted to comply with the FLSA, TQ contends that it is entitled to the good faith defense because it attempted to comply with the regulations of the Department of Transportation. In fact, TQ does not even mention any attempt or basis for having a reasonable belief that it complied with the FLSA. Thus, TQ has not met its burden and the Plaintiffs are entitled to summary judgment on the good faith defense as a matter of law.

## V. CONCLUSION

For the reasons set forth herein, Plaintiffs request that this Court enter judgment in their favor and against the Defendant.

Respectfully submitted,

RAYMOND BUSCARINO,
On Behalf of Himself and Others
Similarly Situated

By: s/William C. Tucker
William C. Tucker (Federal ID 6187)
Nelson & Tucker, PLC
600 Peter Jefferson Parkway, Suite 100
Charlottesville, Virginia 22911
Telephone: (434) 979-0049
Facsimile: (434) 979-0037
Email: william.tucker@nelsontucker.com

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Plaintiff's Reply Memorandum In Support of His Motion for Summary Judgment was served by electronic mail on this 21st day of June, 2010 to the following:

Robert D. Moseley, Jr., Esq.
Jason Nutzman, Esq.
300 East McBee Ave.
Suite 500
Greenville, South Carolina 29601
(864) 242-6440 *Phone*
(864) 240-2474 *Fax*
rob.moseley@smithmoorelaw.com
jason.nutzman@smithmoorelaw.com