IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Raymond Buscarino, on behalf of himself and others similarly situated; William Justin Steinberg, on behalf of himself and others similarly situated, | ) ) ) ) ) | C/A No.: 0:08-3882-JFA |
| Plaintiffs, | ) ) | **ORDER** |
| vs. | ) ) | |
| TQ Logistics, Inc., | ) ) | |
| Defendant. | ) ) | |

Through this collective action, plaintiff Raymond Buscarino and ten others seek to recover unpaid overtime compensation, allegedly earned working as spotters for defendant TQ Logistics, Inc., pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219 (2006). Both the spotters and TQ have moved for summary judgment. (ECF Nos. 74, 76.) TQ seeks a ruling that certain provisions of the FLSA, 29 U.S.C. § 213(b)(1), exempt the spotters from its overtime requirements. The spotters seek partial summary judgment on three discrete issues: (1) the appropriate statute of limitations; (2) the applicability of the Motor Carrier Act exemption; and (3) the availability of liquidated damages. The parties have fully briefed these issues and the court heard argument at a July 19, 2010 hearing. On July 20, 2010, the court requested (ECF No. 87) and received (ECF Nos. 88, 89) additional targeted briefing. This order serves to announce the ruling of the court.

I.  Background

TQ provides spotting services for Bowater, Inc. at its paper mill in Catawba, South Carolina. At the Bowater facility, spotting services generally involve shuttling trailers, both empty and full, in and around the paper mill. Mechanically, the spotting service at the Bowater mill operate as follows: (1) arriving over-the-road drivers deliver their trailers to the TQ inspection dock where spotters inspect the trailers; (2) should the trailer pass inspection, the over-the-road driver tows the trailer to the trailer pool and drops it off; (3) when Bowater is ready to use the trailer again a spotter will locate the trailer and drop it off at the loading dock so that Bowater employees may load it; (4) after the trailer is loaded, the spotter will either tow the trailer back to the trailer pool or deliver it to an over-the-road driver at the Bowater mill. The entire process generally occurs within a gated area on Bowater property that is inaccessible to the public. However, spotters have made use of a public road running through Bowater property to store trailers in employee parking lots that were neither fenced, nor gated, though that practice is now defunct (An acquisition of additional land approximately two years ago increased the size of the trailer pool such that the spotters no longer make use of parking lots or the roads leading to them.). Also, during a three-week period in late-fall 2005 TQ rented an over-the-road tractor, which certain spotters used to transport Bowater paper from Catawba, South Carolina, to Charlotte, North Carolina.

Because the paper mill operates continuously, TQ provides spotting services around the clock. Accordingly, full-time spotters may work as many as 70 hours per week and part-

2

time spotters typically work between 12 and 48 hours per week.

II.     Standard

Rule 56(c) provides that summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of some alleged factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Ballenger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis omitted). A fact is material if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986). An issue is genuine if the evidence offered is such that a reasonable jury might return a verdict for the nonmovant. Id. at 257. In cases where the parties dispute material facts, "the non-moving party is entitled to have his evidence as forecast assumed, his version of that in dispute accepted, and the benefit of all favorable inferences." Henson v. Liggett Group, Inc., 61 F.3d 270, 275 (4th Cir. 1995). Moreover, the court "may not make credibility determinations or weigh the evidence." Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004).

When considering cross motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law. Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003). The

court must endeavor to resolve factual disputes and competing inferences in favor of the party opposing each motion. Id.

III. Law

The FLSA requires an employer to compensate a covered employee at time-and-a-half for any hours worked in excess of forty per week. 29 U.S.C. § 207(a)(1). However, employees "with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of Section 31502 of Title 49 of the Motor Carrier Act" are exempted from this requirement. 29 U.S.C. § 213(b)(1). The jurisdiction of the Secretary of Transportation (the "Secretary") encompasses "transportation by motor carrier and the procurement of that transportation, to the extent that passengers, property, or both, are transported by motor carrier between a place in a State and another State." 49 U.S.C. § 13501.

Section 31502 of the Motor Carrier Act authorizes the Secretary to establish qualifications and maximum hours of service for employees of a motor carrier whose activities affect the safety of operation. Troutt v. Stavola Bros. Inc., 107 F.3d 1104 (4th Cir. 1997). See also 29 C.F.R. § 782.2(a) (the Motor Carrier Act authorizes the Secretary to establish qualifications and maximum hours of service when (1) the employee is employed by a carrier "whose transportation of passengers or property by motor vehicle is subject to his jurisdiction under section 204 of the Motor Carrier Act," and (2) the employee "engage[s] in activities of a character directly affecting the safety of operation of motor vehicles in the

transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act."); but see Trout, 107 F.3d at 1108 n.1 (noting that the "'unique provisions' of the motor carrier exemption to the FLSA meant that the [Supreme Court] was 'not dealing with an exception to that Act which is to be measured by regulations which Congress has authorized to be made by the Administrator of the Wage and Hour Division, United States Department of Labor,'" and attributing no weight to a Wage and Hour Division interpretive bulletin (quoting Levinson v. Spector Motor Serv., 330 U.S. 649, 676-77 (1947))). Accordingly, "[m]otor carrier employees whose activities affect the safety of operation of the motor carrier are covered by the Motor Carrier Act and exempt from regulation under FLSA; but those whose activities do not affect the safety of operation are not governed by the Motor Carrier Act, and not exempt from the wage and hour provisions of FLSA." Troutt v. Stavola Bros., Inc., 107 F.3d 1104 (4th Cir. 1997). Employees need not devote "all or even the majority of their time to safety-affecting activities in order to be covered by the Motor Carrier Act," the act only requires that an employee devote "a substantial part of his time to activities affecting safety of operation." Id. at 1109 (internal citation omitted).

The Secretary's jurisdiction "comprises only certain classes of employees—truck drivers, loaders, mechanics, and helpers[;] only if an employee falls within one of these classes does the Motor Carrier Act govern him." Id. (citing Pyramid Motor Freight Corp. v. Ispass, 330 U.S. 695 (1947)). And while an employee's class of work plays an important role

in assessing the applicability of the exception to him, the court must undertake an individual analysis when there is a "factual question as to whether a particular employee is within one of these covered classifications." Troutt, 107 F.3d at 1108. That inquiry must focus on "the activities of each [plaintiff]" to determine if "the activities come within the Commission's definition for the work" of the covered position. Id. (internal citation omitted). That is to say that if an employee does not perform the work of a "driver," "driver's helper," "loader," or "mechanic," the motor carrier exemption to the FLSA does not apply to him because his activities cannot affect the safety of operations in the determination of the Secretary. Pyramid, 330 U.S. at 706–07 ("The Commission has done its work. . . . The special knowledge and experience required to determine what classifications of work affect safety of operation of interstate motor carriers have been applied by the Commission. The determination whether or not an individual employee is within any such classification is to be determined by judicial process."). The Fourth Circuit has also explicitly stated that the de minimus exception enunciated in Pyramid remains good law and safety-related activity may be so limited, trivial, casual, or occasional as to not affect safety of operation. Id. at 1109; Blakenship v. Thurston Motor Lines, Inc., 415 F.2d 1193, 1196 (4th Cir. 1969).

In assessing the applicability of the motor carrier exception, the court must be mindful that exemptions "from humanitarian and remedial legislation such as the Fair Labor Standards Act must be narrowly construed, giving due regard to the plain meaning of the statutory language and the intent of Congress." A.H. Phillips, Inc. v. Walling, 324 U.S. 490,

6

493 (1945). An exemption to the FLSA is an affirmative defense on which the defendant bears the burden of proof. Clark v. J.M. Benson Co., 789 F.2d 282, 286 (4th Cir. 1986). A defendant must prove a plaintiff's exempt status by clear and convincing evidence. Shockely v. City of Newport News, 997 F.2d 18, 21 (4th Cir. 1993).

IV. Discussion

    A. TQ's Motion for Summary Judgment

        1. TQ Contends that the Spotters are "Drivers" Subject to the Jurisdiction of the Secretary under the Motor Carrier Act

In Levinson, 330 U.S. 649, and Pyramid, 330 U.S. 695, the Supreme Court placed factual findings as to safety firmly within the jurisdiction of the Secretary. See Troutt, 107 F.3d at 1107. In early interpretive bulletins, the Secretary found that the positions of "driver," "driver's helper," "loader," and "mechanic" affect the safety of operations of motor vehicles, and no others. Id. Accordingly, to affect safety of operations, an employee must perform the activities the Secretary associates with one or more of those jobs. Id. at 1108. Pursuant to Pyramid, no other jobs, by definition, can affect safety. 330 U.S. 695.

TQ argues that the spotters should be classified as "drivers" under the Motor Carrier Act. For the Secretary of Transportation to have jurisdiction over the spotters, their activities must consist, wholly or in part, of that of a "driver." The Supreme Court has been clear in its insistence on the relevant inquiry: "[T]he District Court shall not be concluded by the name which may have been given to an employee's] position," but "shall give particular attention to whether or not the activities of the respective respondents included that kind of

7

[position] which is held by the Commission to affect safety of operation." Pyramid, 330 U.S. at 707.

The relevant Federal Motor Carrier Safety Regulation defines a driver as "any person who operates a commercial motor vehicle." 49 C.F.R. § 390.5. A "commercial motor vehicle" is "any self-propelled or towed motor vehicle used on a highway in interstate commerce to transport passengers or property when the vehicle" meets certain requirements. Id. "Highway" means "any road, street, or way, whether on public or private property, open to public travel." Id. "Open to public travel" means "that the road section is available, except during scheduled periods, extreme weather or emergency conditions, passable by four-wheel standard passenger cars, and open to the general public for use without restrictive gates, prohibitive signs, or regulation other than restrictions based on size, weight, or class of registration." Id. If the spotters' activities do not fit this Rube Goldberg-esque definition of "driver," as serially defined by its constituent terms, then they are entitled to time and one half for overtime work.

The undisputed facts indicate that, after the acquisition of land from Georgia Pacific, the everyday activities of the spotters transpired on Bowater property behind secured gates and not on thoroughfares open to and accessible by the public. (Catoe Decl. ¶ 7, ECF No. 82-1.) Accordingly, the court finds that TQ has not shown that the spotters' activities, subsequent to the expansion of the gated area, come within the definition of "driver" as determined by the Secretary. However, this finding does not fully address the question of

8

TQ's entitlement to the exemption during the relevant statute of limitations, as the spotters did make use of roads open to the public to store trailers in an employee parking lot prior to 2009, and, for a three week period in late fall 2005, used an over-the-road tractor to transport Bowater paper from Catawba, South Carolina, to Charlotte, North Carolina.

    2.   Trailer Storage and the Employee Parking Lot

In order to classify the spotters as "drivers," the court must find that they transported "passengers or property" in interstate commerce, as defined in the Motor Carrier Act. See 49 U.S.C. § 13501. The undisputed facts indicate that trailers were towed over public roads to an employee parking lot (whether any of the trailers contained paper is disputed).

      a.   The Import of Empty Trailers

TQ asserts that even if every trailer spotted to the overflow lot was empty, the trailers constituted "property" and the spotters' actions in towing them over a public road make them all "drivers." Accordingly, the first question is whether an empty trailer constitutes "property." The term "property" is not defined in the Motor Carrier Act or the regulations issued by the Department of Transportation. However, "trailer" is defined as a "motor vehicle." 49 C.F.R. § 390.5. Because a "driver" must operate a "commercial motor vehicle" and transport "passengers or property" to come under the exemption, it is somewhat incongruous for a "commercial motor vehicle" to also be "property. But that is exactly the conclusion reached by the Department of Transportation in the following interpretive guidance:

9

> Question 6: Is transporting an empty CMV across State lines for purposes of repair and maintenance considered interstate commerce?
>
> Guidance: Yes. The FMCSRs are applicable to drivers and CMVs in interstate commerce which transport property. The property in this situation is the empty CMV.

See Question 6, § 390 Guidance: Interpretation for Definitions, Federal Motor Carrier Safety Administration, http://www.fmcsa.dot.gov/ (follow "Rules & Regulations" hyperlink; then follow "Driver Regulations" hyperlink; then follow "390 General Guidance 'Yes'" hyperlink.). See also Ritter v. Cecil County Office of Housing and Comm'ty Dev., 33 F.3d 323 (4th Cir. 1994) (finding that less deference is due an agency's interpretive rules than regulations adopted through the official rulemaking process); but see Kennedy v. Shalala, 995 F.2d 28, 30 n.3 (4th Cir. 1993) ("Though the interpretive ruling at issue here does not itself have the force and effect of law or regulation, it is nonetheless entitled to deference as the Secretary's interpretation of a statute she is charged with administering."). Because, "property," as an undefined term, is ambiguous when applied to the specific situation at bar, the court finds that it must give due regard to the interpretive guidance of the Secretary—empty trailers can constitute "property" in certain circumstances. Shalala, 995 F.2d at , 30, 30 n.3 ("Of course, when we are confronted with a statutory provision that is silent or ambiguous with respect to the specific issue at hand, we must defer to a reasonable interpretation of the agency charged with administering that law."). Accordingly, the second question becomes whether, at the time the trailers were spotted to the overflow lot, there was a fixed and persistent intent, see, e.g., Klitzke v. Steiner Corp., 110 F.3d 1465 (9th Cir.

1997), that they be transported out of state to be serviced or repaired. See Question 6, § 390 Guidance: Interpretation for Definitions, supra. If so, the spotters' actions in taking the trailers across the public road to the overflow lot could have initiated the trailers' practical continuity of movement into interstate commerce in the manner described in the Secretary's guidance. Should TQ prove able to make such a showing, the court would then need to make a finding as to when each of the spotters could have been reasonably called on to take empty trailers to the overflow lot. See discussion of 49 Fed. Reg. 37902-02, infra Part IV.A.3.

          b.      The Import of Loaded Trailers

Should the facts at trial show that trailers loaded with paper were spotted to the overflow lot, a different analysis would apply. The record reflects that Bowater shipped its paper rolls from South Carolina to Virginia, Kentucky, Michigan, Tennessee, Massachusetts, Illinois, and Pennsylvania. These paper rolls are, without question, property in interstate commerce within the meaning of the Motor Carrier Act. 49 U.S.C. § 13501 ("The Secretary and the Board have jurisdiction, as specified in this part, over transportation by motor carrier and the procurement of that transportation, to the extent that passengers, property, or both, are transported by motor carrier . . . between a place in . . . a State and a place in another State."); see, e.g., Talton v. I.H. Caffey Distrib. Co., Inc., No. 04-1652, at *3 (4th Cir. January 18, 2005). Loaded trailers present the question of whether the spotters' activities initiated the paper's "practical continuity of movement," Walling v. Jacksonville Paper Co., 317 U.S. 564, 569 (1943), in interstate commerce, or whether the paper entered the stream

11

of commerce after the spotters' involvement ceased. Some accounts of the spotters' activities suggest that no loaded trailers were ever taken to the overflow lot (Evans Dep. 20:18–23; Catoe Dep. 64:4-6), other accounts suggest that they were. (Baxter Dep. 32:23.) Because viewing the facts in the light most favorable to the spotters suggests that only empty, damaged trailers were taken to the overflow lot, and that the trailer companies would handle the trailers from there (Evans Dep. 20:18–23.), the court finds that a genuine issue of material fact exists for trial.

       3.      The Fall 2005 Trips to Charlotte, North Carolina

During a three-week period in Fall 2005, TQ rented an over-the-road tractor and had spotters use the tractor to transport Bowater paper from Catawba, South Carolina, to Charlotte, North Carolina. (Nance Aff. ¶ 8; Pitzer Dep. 14:18–23.) This activity is clearly within the jurisdiction of the Secretary of Transportation as the spotters acted as "drivers" transporting "property" using "commercial motor vehicles" on "highways" "open to the public." See 49 C.F.R. § 390.5. However, no other interstate trips by spotters before or since appear in the record. As TQ argues that the Charlotte runs entangle all spotters in the jurisdiction of the Secretary, the court must assess the residual impact of the trip on the Secretary's jurisdiction.

In Morris v. McComb, the Supreme Court predicated the jurisdiction of the predecessor to the Secretary on the likelihood that a driver will be assigned interstate runs in the regular course of his employment. 332 U.S. 422 (1947). Grappling with some mild

tension in the caselaw, the Department of Transportation issued an interpretation of its jurisdiction. 49 Fed. Reg. 37902-02. In the interpretation, the department fashioned a four-month rule whereby: "Evidence of driving in interstate commerce or being subject to being used in interstate commerce should be accepted as proof that the driver is subject to 49 U.S.C. 304 for a 4-month period from the date of the proof." Id. In the absence of any guidance from the Supreme Court or the Fourth Circuit, and heeding Kennedy v. Shalala, 995 F.2d 28, the court adopts the department's four-month rule. Taking the facts in the light most favorable to the spotters, the court cannot conclude that a one-time trip out of state using a specially rented tractor constitutes evidence beyond the fact of its occurrence. Accordingly, TQ will need to show that each spotter seeking overtime though this action was subject to being used in interstate commerce at some point at least four months prior to the pay period at issue, the Fall 2005 trip only providing support for the Secretary's jurisdiction for four months from the point of its occurrence.

Accordingly, taking the facts in the light most favorable to the spotters, the court cannot conclude that TQ has met its heavy burden to demonstrate that it is entitled to the Motor Carrier Act exemption to the FLSA, and the court hereby denies its motion for summary judgment.

B. The Spotters' Motion for Partial Summary Judgment

The spotters seek summary judgment on three issues: (1) the statute of limitations; (2) the motor carrier exemption; and (3) liquidated damages.

1. The Statute of Limitations and Equitable Tolling

The spotters assert that they are entitled to a three-year statute of limitations, and that the statute of limitations should be tolled because TQ concealed their right to overtime compensation and minimum wages.

a. Statute of Limitations

The FLSA provides for a two-year statute of limitations absent a showing of willful violation, in which case a three-year statute of limitations applies. 29 U.S.C. § 255. To obtain the benefit of the three-year statute of limitations, a plaintiff must show that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]"—a showing that an employer acted unreasonably or negligently is not enough. McLaughlin v. Richland Shoe Co., 486 U.S. 128, 134 (1988). A violation is not willful if "an employer acts reasonably in determining its legal obligation." Id.

The spotters argue, and TQ concedes, that most if not all of their number inquired about the availability of overtime and were told that it was not available. (Buscarino Dep. 50:1; Evans Dep. 22:12–23:1; Wilson Dep. 21:15-22:5; Def. Resp. at 3.) However, the court finds that the record lacks sufficient evidence regarding the reasonableness of TQ's actions in determining any obligation it may have under the FLSA to rule one way or another. This issue will be revisited at trial.

b. Equitable Tolling

In addition to the availability of a 3-year statute of limitations for willful violations,

14

the FLSA is susceptible to the doctrine of equitable tolling. Chao v. Va. Dep't of Transp., 291 F.3d 276, 283 (4th Cir. 2002). However the circumstances in which equitable tolling is permitted are quite narrow. Id. "Equitable tolling has been allowed 'in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'" Id. at 284 (quoting Irwin v. Dept. of Veterans, 498 U.S. 89, 96 (1990)). Equitable tolling may also be appropriate when "extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." Harris v. Hutchison, 209 F.3d 325, 330 (4th Cir. 2000). "Equitable tolling is not appropriate, however, where the claimant failed to exercise due diligence in preserving his legal rights." Chao, 291 F.3d at 283 (internal citation omitted).

The spotters' argue that TQ failed to comply with the FLSA's notice provisions by failing to post information concerning the spotters' right to overtime. TQ argues that failing to post FLSA requirements is not enough, and that the spotters must show that TQ attempted to mislead them and that the spotters reasonably relied on TQ in delaying to file an FLSA suit. As this is not a situation involving a defective pleading or extraordinary circumstances, the spotters must show that TQ's misconduct induced or tricked the spotters into allowing a filing deadline to pass. The court finds that the spotters have not made a sufficient showing of inducement or trickery to trigger equitable tolling. However, the court will revisit this issue at trial.

15

2. The Motor Carrier Exception

Based on the undisputed facts concerning the spotters' everyday activities, and based on the analysis above in Part I.A.1, the court finds that the Motor Carrier Act exemption to the FLSA inapplicable to the spotters' activity insofar as it occurred behind a gate on private property. However, the court cannot enter summary judgment for the spotters on the total and complete inapplicability of the Motor Carrier Act exemption. Taking the facts in the light most favorable to TQ, the court finds that genuine issues of material fact concerning whether the trailers spotted to the overflow lot contained paper, and whether any damaged, empty trailers were to be transferred out of state, preclude a ruling that the exemption absolutely does not apply. Similarly, additional evidence is necessary to determine whether at any point beginning four months from the end of the Fall 2005 runs to Charlotte, North Carolina, the spotters were subject to being used for similar runs.

3. Liquidated Damages

The FLSA provides that: "Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216. However, "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA] the court may, in its sound discretion, award no

16

liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title." 29 U.S.C. § 260. Accordingly, to trigger the good faith exception to liquidated damages, an employer must satisfy both the subjective good faith requirement and must also have objectively reasonable grounds for its decision. The Fourth Circuit has made it clear that "an employer may not simply remain blissfully ignorant of FLSA requirements" and avoid liquidated damages. Burnley v. Short, 730 F.2d 136 (4th Cir. 1984).

The spotters argue that TQ took no action to ascertain the requirements of the FLSA and therefore can have no reasonable grounds for believing that it was in compliance with the act's provisions. In support of this position, the spotters point to what they characterize as a total lack of evidence of either subjective or objective good faith. TQ, in turn, argues that Brittany Gresham, Vice President of Human Resources at TQ, maintained records on all spotters pursuant to DOT regulations and attended classes every 6 months that discuss DOT regulations. (Gresham Dep. 21:2–9.) By way of comparison, in Burnley, the Fourth Circuit found that the nature of the defendant's motel business and reliance on a state motel association brochure were sufficient to insulate him from a finding of recklessness, and allowed Burnley to avail himself of the good-faith exception. As with the spotters' equitable tolling argument, the court finds that genuine issues of material fact preclude ruling one way or another on this issue and will revisit it at trial.

V. Conclusion

The court finds that to the extent the spotters' activities take place on private roads

17

secured by gates or otherwise, their activities cannot meet the matryoshka-doll-like definition of "driver" as set forth in the relevant regulations. Accordingly, TQ's motion for summary judgment is denied (ECF No. 76), and the spotters' motion for summary judgment is granted in part (ECF No. 74). Four discrete issues remain for trial: (1) whether empty, damaged trailers were taken out of state; (2) whether loaded trailers were taken to the overflow lot; (3) whether at any time after Fall 2005 any of the spotters could have reasonably been called on to make a repeat of the Charlotte run; and (4) the reasonableness of TQ's actions in determining its obligations under the FLSA, an issue that bears on both the statute of limitations and liquidated damages.

This matter is currently scheduled for trial during the September/October 2010 jury term. However, the parties have indicated a willingness to try this case nonjury. Upon the filing of the appropriate declarations, the court will schedule a bench trial in this matter.

IT IS SO ORDERED.

August 11, 2010  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge